168

In the Matter of the Arbitration between ROBERT DOWNEY, JR., Respondent, and MOTOR VEHICLE ACCIDENT INDEMNIFICATION CORPORATION, Appellant.

LOUIS SARACINA et al., Respondents-Appellants, v. MOTOR VEHICLE ACCIDENT INDEMNIFICATION CORPORATION, Appellant-Respondent, et al., Defendants.

ETHEL RITTENHOUSE, Respondent, v. MOTOR VEHICLE ACCIDENT INDEMNIFICATION CORPORATION, Appellant, et al., Defendants.

LOUIS SARACINA et al., Respondents-Appellants, v. MOTOR VEHICLE ACCIDENT INDEMNIFICATION CORPORATION, Appellant-Respondent, et al., Defendants.

ROBERT DOWNEY, JR., an Infant, by PETER B. CARR, Guardian ad Litem, Appellant, v. CITY OF BUFFALO, Respondent, et al., Defendant.

Fourth Department, December 6, 1973.

*Schaus & Schaus* (*Bond, Schoeneck & King, John M. Freyer* of counsel), for Motor Vehicle Accident Indemnification Corporation.

*Francis X. Murphy* for Robert J. Downey, Jr.

*Miserendino, Krull & Foley* (*Paul A. Foley* of counsel), for Louis Saracina and another, respondents-appellants.

*Jaeckle, Fleischmann & Mugel (Lawrence H.. Wagner* of counsel), for Merchants Mutual Insurance Company, respondent.

*Adams, Brown, Starrett & Maloney, P. C. (T. Alan Brown* of counsel), for Travelers Indemnity Company, respondent.

*Schaus & Schaus (John M. Freyer* of counsel), for MVAIC on behalf of Robert J. Downey, Jr., appellant.

*Gleason & O'Connor (Lawrence H. Wagner* of counsel), for City of Buffalo, respondent.

MOULE, J. We have before us appeals from judgments and orders in four related cases arising out of a July 29, 1965 automobile accident in which a Buffalo Fire Department vehicle, owned by the City of Buffalo and driven by Mary L. Downey, the wife of a Captain in the Buffalo Fire Department, collided with a vehicle owned by Louis Saracina and driven by his wife, Mary. In the car with Mary Downey at the time of, the accident were her 11-year-old son, Robert Downey, Jr., and her mother, Ethel Rittenhouse. Two of these come before us on appeals from a judgment and order in separate cases and two come on appeal from judgments and orders in a third case after being heard together. The first is an appeal by the Motor Vehicle Accident Indemnification Corporation (MVAIC) from an order of Special Term vacating a stay of arbitration between it and Robert Downey, Jr. The second and third are appeals by the Saracinas and the MVAIC from orders of the Supreme Court granting summary judgments and the judgments entered thereon in favor of Merchants Mutual Insurance Company (Merchants Mutual) and Travelers Indemnity Company (Travelers) in an action commenced to determine which company should pay personal injury and property damage claims of the Saracinas and Ethel Rittenhouse as a result of the accident. The fourth is an appeal by Robert Downey, Jr. and the MVAIC from a dismissal by the Supreme Court in favor of the City of Buffalo in a personal injury action brought by Robert Downey, Jr. against the city and Louis Saracina as owners of the respective vehicles involved in the accident.

The precise details involving how the accident which gave rise to this multi-sided litigation occurred are not at issue in any of these appeals we are here called upon to decide. For our purposes, it is sufficient to say that the vehicle which Mrs. Downey was driving was assigned by the Fire Department to her husband, Captain Robert Downey, for use in connection with his work as chief of the arson squad, and was garaged

at his home in Orchard Park, New York, when not in use. The accident occurred while Mrs. Downey was using the car to drive her mother and son to the drugstore. Mrs. Downey was not injured in the collision but her mother and son both were as was Mary Saracina, the driver of the other car. In addition, there was property damage to the Saracina vehicle. At the time of the accident, the City of Buffalo was insured for automobile liability under a policy of insurance written by Merchants Mutual. Mary Downey and her husband were also insured by Merchants Mutual under a separate policy. The Saracinas were insured by Travelers.

Three separate negligence actions arose out of the accident. Robert Downey, Jr. commenced an action in negligence against Louis Saracina, Mary Saracina and the City of Buffalo. He did not sue his mother because at the time the action was instituted the law of this State was that a parent could not be liable in negligence to his or her minor child. We appreciate, of course, that this rule has since been changed (*Gelbman* v. *Gelbman*, 23 N Y 2d 434). Ethel Rittenhouse commenced a negligence action against Mary and Louis Saracina, Mary Downey and the City of Buffalo and the Saracinas brought a negligence action against Mary Downey and the City of Buffalo.

Thereafter Merchants Mutual refused to defend the actions commenced against Mary Downey, who brought a declaratory judgment action against the company to compel it to defend and indemnify her. That case was heard by this court and we determined that Merchants Mutual was required to defend Mary Downey. We further determined in that case that should it be found in the then pending negligence actions that Mary Downey was driving the car at the time of the accident with the permission of the City of Buffalo, then Merchants Mutual would be liable to pay any recovery had against her to the extent of its policy coverage (*Downey* v. *Merchants Mut. Ins. Co.*, 30 A D 2d 171, affd. 23 N Y 2d 989).

The negligence actions were tried in December, 1970. At the close of the plaintiff's case, a judgment was entered dismissing the suits against the City of Buffalo on the ground that evidence presented by the city had sufficiently overcome the presumption of consent that attached to an owner of a vehicle operated by another person (Vehicle and Traffic Law, § 388) and on the additional ground that, as a matter of law, a municipality cannot legally consent to the use of its property by private persons. The case was then submitted to a jury which subsequently returned a verdict of no cause of action in the suits by Robert

Downey, Jr. and Ethel Rittenhouse against the Saracinas, a verdict in the amount of $7,000 in favor of Ethel Rittenhouse against Mary Downey, and verdicts totaling $8,509.50 in favor of the Saracinas against Mary Downey. One of the appeals before us is by Robert Downey, Jr. and the MVAIC from that portion of the judgment which was in favor of the city.

Following the entry of judgment upon the verdicts in the negligence actions against Mary Downey, the Saracinas and Ethel Rittenhouse commenced suits against Merchants Mutual demanding that as insurer of Mary Downey it be compelled to pay the judgments entered against her or, in the alternative, that MVAIC be required to pay them. The Saracinas also joined their own insurer, Travelers, as a defendant asking that it be compelled to pay their claim under the uninsured motorist indorsement in their policy in the event that Merchants Mutual was held not liable.

These cases were also presented together and resulted in summary judgments that Merchants Mutual was not liable under either its policy covering the City of Buffalo or its policy covering Mary Downey and that Travelers was likewise not liable under the uninsured motorist indorsement on its policy covering the Saracinas. Both the Saracinas and the MVAIC have appealed from these judgments and their appeals are also before us today.

The final appeal which we must decide arises from a separate series of events related to those already described but not following them in sequence of time. After Merchants Mutual had disclaimed liability for the injuries caused in this accident, Robert Downey, Jr. filed a timely notice of claim with the MVAIC. His negligence actions against Louis Saracina and the City of Buffalo then proved unsuccessful and he sent notice of this to the MVAIC along with an invitation to settle a new claim he was asserting against his mother inasmuch as the law involving the liability of parents to their children in negligence had since been changed. Shortly thereafter, he served the MVAIC with a demand for arbitration but a temporary stay was granted pending the outcome of the two declaratory judgment actions against Merchants Mutual and Travelers which had not then been decided. When it was finally determined that neither Merchants Mutual nor Travelers was liable under their policies, an order was entered vacating the temporary stay and directing the MVAIC to proceed to arbitration with Robert Downey, Jr. It is from this order that the MVAIC has appealed.

DOWNEY V. CITY OF BUFFALO

We shall first consider the question of whether or not the court erred in dismissing the various negligence actions brought against the City of Buffalo, as owner of the Fire Department vehicle, on the ground that as a municipality it could not have consented to the use of the car by Mary Downey as a matter of law. We think that the court was correct in its determination.

The evidence shows that the car in question was assigned by the city for the use of Captain Downey in connection with his duties as chief of the arson squad for the Buffalo Fire Department. His duties included investigating all suspicious fires and responding to multiple alarms and he was on call 24 hours a day, seven days a week. In order to perform these functions, it was imperative that he have a Fire Department vehicle at his disposal on a regular basis. His custody and use of the car was clearly necessary in connection with his work and was proper in furtherance of the city's business. On the other hand, Mary Downey's use of the car to take her mother and son to the drugstore was clearly a personal use of the vehicle and not in furtherance of the city's business. In fact, by even temporarily depriving her husband of access to the car, her actions defeated the city's purpose in assigning it to him in the first place. Thus, rather than furthering the city's business, she was actually obstructing it, for her own personal needs.

A municipality cannot consent to the use of its property for private purposes (*Fox v. Employers' Liab. Assur. Corp.*, 243 App. Div. 325, affd. 267 N. Y. 609; *Fox v. Employers' Liab. Assur. Corp.*, 239 App. Div. 671; *Fox v. City of Syracuse*, 231 App. Div. 273, affd. 258 N. Y. 550). Furthermore, " no county, city, town, village or school district shall give or loan any money or property to or in aid of any individual " (N. Y. Const., art. VIII, § 1). Since Mary Downey's use of the city's car was for her own private purposes, the city is precluded by law from consenting to such employment of its property. Captain Downey could not impliedly consent on its behalf (*Fox v. City of Syracuse, supra*). We see no reason, as appellants urge, to overrule the holding of the *Fox* cases (*supra*), on the basis that the public policy of this State with regard to compensating innocent victims of automobile accidents has since been changed. Be that as it may, the policy of this State with regard to insuring that public property not be appropriated for private use, has not. Thus, the judgment of the court dismissing plaintiff's cause of action against the City of Buffalo should be affirmed.

SARACINAS and RITTENHOUSE v. MVAIC, et al.

This appeal, taken only by the Saracinas and the MVAIC, is from orders of the Supreme Court, Erie County, granting summary judgments and the judgments entered thereon that Merchants Mutual was not liable as insurer of Mary Downey and that Travelers was not liable as insurer of the Saracinas under the uninsured motorist indorsement on their policy. The court's reasoning in this case was that under the terms of the Merchants Mutual policy Mary Downey was not covered for the operation of a vehicle she did not own unless she had the permission of the owner to do so, and that under the terms of the uninsured motorist indorsement on the Saracinas' policy with Travelers, they were not covered because the terms of the indorsement excluded government-owned vehicles from its definition of uninsured automobiles. We agree with the trial court's determination that Mary Downey was not covered under her policy with Merchants Mutual but we disagree that the uninsured motorist indorsement on the Travelers policy did not cover the Saracinas.

As we noted in the previous appeal (*Downey v. City of Buffalo*, 30 A D 2d 171, affd. 23 N Y 2d 989, *supra*), the City of Buffalo did not consent to Mary Downey's use of the Fire Department vehicle for her private purposes. This being the case, it could not be held liable in negligence as the owner of the car and, thus, Merchants Mutual could not be liable as the city's insurer. The only way Merchants Mutual could be held to pay the judgments entered against Mary Downey as a result of the accident would be under its separate policy as Mary Downey's insurer. However, the Downey's policy, under which both Captain Downey and Mary Downey were insured, contained a clause which clearly limited their coverage in driving " non-owned " automobiles to situations wherein the permission of the car's owner had been obtained.[1] The MVAIC's con-

---

1. " Persons Insured

" The following are insureds under Part I:

" (a) With respect to the owned automobile,

" (1) the named insured and any resident of the same household,

" (2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured;

" (b) With respect to a non-owned automobile,

" (1) the named insured,

" (2) any relative, but only with respect to a private passenger automobile or trailer,

provided the actual use thereof is with the permission of the owner ",

tention that the proviso as to owner's permission contained in paragraph (b) of the policy is intended only to modify the phrase contained in subparagraph (b) (2) is untenable. It is plainly intended to modify subparagraph (b) (1) as well as subparagraph (b) (2) in that it is positioned flush with the left hand margin of the entire paragraph rather than being merely a continuation of the latter subparagraph. This distinction becomes even more lucid when compared with the configuration of paragraph (a), appearing directly above it in the policy, where the positioning of this same proviso clearly is intended to modify only the second of the two subparagraphs in that clause. We are unable to find any New York cases in which the terms of such a policy provision have been construed. However, *Bright* v. *Ohio Cas. Ins. Co.* (444 F. 2d 1341) involved the construction of a policy clause identical in both language and positioning to the one before us today, and in that case the court interpreted the meaning of the clause to be the same as we have found it.

The second question resolved by the trial court in this case, that the uninsured motorist indorsement did not cover the Saracinas under their policy with Travelers, is more difficult. To reach this result, the court placed a literal interpretation upon a clause in the standard indorsement which excluded government-owned vehicles from its definition of uninsured automobiles. The effect of this determination was that, although the car driven by Mary Downey was effectively uninsured by virtue of the nonliability of Merchants Mutual under either her policy or the city's (Insurance Law, § 167, subd. 2-a), the Saracinas, who were innocent victims of the accident and who were themselves insured under a policy containing coverage for such contingencies, would be left without insurance protection on the mere circumstance that the vehicle which collided with theirs was one owned by a government and driven by an unauthorized operator. Such a result is unreasonable, unduly harsh and contrary to the policy expressed by the Legislature in article 17-A of the Insurance Law, which establishes the MVAIC and provides for coverage under indorsements to private insurance policies, that innocent victims of accidents be compensated for injuries sustained at the hands of uninsured motorists (Insurance Law, § 600, subd. [2]).

We are urged, that to reach a just result as far as the Saracinas are concerned, we should invalidate the exclusion for government-owned vehicles in the standard uninsured motorist indorsement required to appear on all automobile liability insurance policies written in this State on the ground that such an

exclusion appears nowhere in any statute and contravenes the clear public policy of New York with regard to the compensation of innocent victims of automobile accidents as expressed in section 600 of the Insurance Law.

As in the first question determined in this appeal, we cannot find any New York cases in which a similar issue has been presented. However, the United States Court of Appeals in *Vaught* v. *State Farm Fire & Cas. Co.* (413 F. 2d 539), applying Arkansas law, did invalidate a nearly identical exclusion in a standard indorsement on public policy grounds, noting that the Arkansas Uninsured Motorist Act did not specifically exclude government-owned vehicles from its scope.

We feel that it is unnecessary to go that far to reach a fair result in this case, nor would doing so be entirely justified in view of the policy expressions in the statutes of this State.

Although a provision corresponding to the indorsement's blanket exclusion of " government-owned " vehicles is not to be found in any relevant New York statutes, subdivision a of section 601 of the Insurance Law, which sets forth the definitions applicable to uninsured motorists under article 17-A, and subdivision 2 of section 311 of the Vehicle and Traffic Law, setting forth similar definitions applicable to the requirement of compulsory insurance in this State, both exclude fire and police vehicles from their provisions. While these exclusions are perhaps not as broad as the blanket exclusion of " government-owned " vehicles contained in the indorsement, they reflect the general policy that governments are presumed to be financially solvent and thus not required to carry liability insurance on their vehicles.

When this same question came before Justice JOSEPH A. NEVINS at Special Term, in the fourth case before us today (*Downey* v. *MVAIC, infra*), he resolved it by reading a proviso into the exclusion in the indorsement that such would apply only when the government-owned vehicle is operated with its knowledge and consent. We agree with Justice NEVINS and believe that this is the only way the exclusion makes any sense. To hold otherwise would be to violate the purpose of the Legislature in assuring compensation to innocent victims of accidents involving uninsured automobiles. Moreover, it would permit a situation where an unauthorized interloper or thief could cause damage with a government vehicle, and the injured party could neither sue the government owner directly due to lack of consent, nor recover from its own insurer because of the exclusion in the indorsement. Accordingly, the orders and judgments in these two cases should be affirmed insofar as Merchants Mutual

was found not liable under its policy covering Mary Downey and reversed insofar as Travelers was found not liable to the Saracinas under the uninsured motorist indorsement on their Travelers policy.

### DOWNEY V. MVAIC

The final case which we decide herein is an appeal by the MVAIC from an order of Special Term which vacated a stay of arbitration of Robert Downey, Jr.'s claim against the MVAIC, originally granted because the actions against the two insurance companies were still pending. The theory was that a judgment in those cases holding Merchants Mutual liable would render young Downey's claim against the MVAIC moot. The terms under which the temporary stay was granted expressly limited its duration until such time as a final determination had been rendered on the merits resolving whether this accident involved an uninsured automobile within the meaning of the New York automobile accident indemnification indorsement.

The arguments relied upon for continuing the stay are the same as those already considered in the prior appeal, where we held, as did Justice NEVINS at Special Term in this case, that the exclusion for government-owned vehicles in the standard uninsured motorist indorsement applies only when such vehicle is operated with the knowledge and consent of the government. Therefore, the pending issues on which the temporary stay was granted having been determined, the court was correct in vacating the order and directing the MVAIC to proceed to arbitration.

The judgments and the order in these cases should be affirmed except that the judgment in the case involving the Travelers Indemnity Company should be reversed insofar as it relieves the Travelers from liability.

GOLDMAN, P. J., MARSH, CARDAMONE and SIMONS, JJ., concur.

Order entered March 16, 1973, unanimously affirmed without costs.

Judgment, entered February 14, 1973, unanimously reversed on the law without costs and judgment entered declaring that the vehicle operated by Mary Downey was an " uninsured automobile " within the meaning of the New York automobile accident indemnification endorsement attached to the Travelers Indemnity Company's Policy MP-3388467 issued to plaintiff Louis Saracina.

Judgment, entered March 2, 1973, unanimously affirmed without costs.

Judgment, entered July 21, 1971 unanimously affirmed without costs.