■ WALTER BURGIN, Respondent, v CITY OF NEW YORK, Appellant, and PAPETTIS TRUCKING COMPANY, Respondent, et al., Defendant. PAPETTIS HYGRADE EGG PRODUCTS, INC., Also Known as PAPETTIS TRUCKING COMPANY, Respondent, v CITY OF NEW YORK et al., Appellants, et al., Defendant. — Judgments, Supreme Court, Bronx County (DiFede, J.), entered June 17, 1981 on behalf of the plaintiff Walter Burgin for the wrongful death of his deceased wife in the sum of $608,673.91, and November 12, 1981 on behalf of the plaintiff Papettis Trucking Co. for property damage in the sum of $29,022.37, reversed, on the law, without costs, and the complaint dismissed. The accident giving rise to these actions occurred on November 10, 1977 at approximately 6:45 A.M. when a city-owned vehicle driven by a State employee, Kenneth Reid, jumped a divider on the New England Thruway and crashed into a truck belonging to Papettis Trucking Co. Both the driver Reid and a passenger in the vehicle, Lillian Burgin, died in the crash. The plaintiffs tried the action on the theory, implicitly credited by the jury in its verdict, that Reid was driving the vehicle with the consent of its owner, the City of New York. (See Vehicle and Traffic Law, § 388.) In our opinion the rebuttable presumption of consent set forth in section 388 was conclusively refuted by the evidence adduced at the trial. Indeed, we are aware of no evidence whatever presented at the trial that supported the inference of consent essential to the judgments appealed from. Accordingly, the judgments are reversed and the complaint dismissed. Reid was a State employee assigned to the Criminal Court, whose duties primarily consisted in delivering materials to various of the city courts. Pursuant to an agreement between the Criminal Court and New York City, Reid was authorized to use the vehicle in question in the performance of his duties. His normal working hours extended from 8:00 A.M. to 4:00 P.M., and on November 9, 1977, the day preceding the accident, he had signed out at 100 Centre Street in New York County at 4:00 P.M. The car in question was usually garaged at 111 Centre Street in the County of New York, directly opposite 100 Centre Street. Notwithstanding severe restrictions imposed by the trial court on the city's presentation of proof on this issue, the record is absolutely clear that.Reid was not authorized to use the vehicle for private purposes, even if it were to be accepted that such permission could have been lawfully extended to him. (See *Fox v City of Syracuse,* 231 App Div 273, affd 258 NY 550; cf. *Matter of Downey [MVAIC]*, 43 AD2d 168; *Aspinall v City of New York,* 246 NY 644.) From the location of the accident, it is evident that Reid had driven the vehicle to his home the evening before and was driving back to work, with the deceased passenger, at the time the accident occurred. The single question remaining is whether the record provides any basis for the inference that his driving the vehicle home the evening before was related to the performance of his duties. All of the evidence in the record contradicts that inference. Nothing in the

nature of Reid's duties suggests any work-related justification for his having taken the vehicle home. Indeed, the testimony of his widow indicates that he did so only on rare occasions, and there is no reason to suppose that those occasions were work related. No doubt it is conceivable that some unusual aspect of his duties on the morning of the accident made it convenient for him to take his vehicle with him on the prior evening. No evidence in support of that hypothesis appears in the record, and although we recognize that Reid's death limited the capacity of the plaintiff to establish such an unusual circumstance, we think the possibility far too remote to justify the verdict reached. We note the testimony of a witness that an employee might be authorized to drive a city vehicle home if the city garage was closed when he completed work. However, Reid had signed out the day before the accident at 4:00 P.M. and no evidence was presented that the city garage at 111 Centre Street was closed at that hour, which in any event would seem in the highest degree doubtful since the garage services the Judges and employees of the Civil Court of New York. If we were not reversing and dismissing for the reasons indicated, reversal and a new trial would in any event have been required because of erroneous rulings by the trial court with regard to the admission of evidence. Most significantly it was reversible error for the trial court to refuse to permit a witness to testify that Reid had been specifically instructed that he was never to take the vehicle home. Concur — Kupferman, J. P., Sandler, Sullivan and Alexander, JJ.